**CITY OF HAMLIN v. MOTOR INV. CO.**

No. 13377.

Court of Civil Appeals of Texas. Dallas.

Dec. 3, 1943.

Rehearing Denied Jan. 7, 1944.

James D. O'Connor, of Dallas, for appellant.

Irion & Cain, of Dallas, for appellee.

BOND, Chief Justice.

On October 22, 1940, Ford Motor Company sold to Elkins Motor Company, of Nocona, Texas, a Ford dealer, a 1941, 95 H.P., 158″ motor truck chassis and delivered to said dealer a "manufacturer's certificate" covering same; soon thereafter, the Elkins Motor Company sold the truck to Simplex Fire Apparatus Company of Dallas, Texas, trade name of R. M. Hedrick, and transferred the manufacturer's certificate to Hedrick or his Company; no lien or reservation of title was noted on the certificate. On November 4, 1940, Hedrick, or his Company, borrowed from J. Earl Presley $876, evidenced by note with chattel mortgage on the truck, and simultaneously therewith, Presley noted the mortgage lien in the margin on back of the manufacturer's certificate, opposite the "First assignment" blank, in the following language: "Nov. 4, 1940. The motor vehicle herein described is mortgaged to J. Earl Presley, 2201 Commerce Street, Dallas, Texas, for $876.00," with a diagonal arrow drawn across the "First assignment," pointing to the notation on the margin. Thereafter, Presley returned the certificate to Hedrick, and forthwith, on November 10, 1940, filed the chattel mortgage in the office of the County Clerk of Dallas County, Texas. On March 22, 1941, Hedrick made, executed and delivered to Presley his further mortgage as a renewal and extension of the first mortgage covering the truck chassis, and in addition, recited, "Any and all equipment attached thereto or built thereon." At the time of these transactions, Hedrick's business was a manufacturer and retail dealer of fire trucks-acquired motor chassis, rebuilt or assembled into fire fighting apparatuses, with booster tanks, hose, hose racks, and other necessary equipment incidental to fire trucks; thus changing the chassis in such manner that their character is lost, that is, they are transformed into mobile vehicles, regulated by Subd. (b) of Sec. 37, Art. 1436—1, Vernon's Ann.P.C. of the State of Texas; and after rebuilding or assembling such vehicles into fire trucks, Hedrick advertised and exposed them to the public for sale in the regular course of business.

In the instant case, it is admitted in pleadings and evidence that the chassis acquired by Hedrick from Elkins Motor Company was thus assembled and transformed, and the resultant fire truck taken in a convoy van from Hedrick's place of business in Dallas, Texas, to the City of Hamlin, Jones County, Texas, and there exhibited and displayed by him for the purpose of sale. Mr. Culberson, Mayor of the City of Hamlin, on investigation and inspection, ascertained that the fire truck was a new motor vehicle owned by Hedrick, and that Hedrick was in the fire apparatus business in Dallas. Culberson made inquiry of and was advised by Hedrick that the equipment and truck were clear of liens, that he had the manufacturer's certificate in his office at Dallas and would mail it to Culberson. Relying upon such representations, and legal advice further obtained that municipalities such as the City of Hamlin were not required by law to get "certificates of title," Culberson, for the City, consummated the deal, paid Hedrick $3,500 in cash and received the truck. The manufacturer's certificate was never delivered to Culberson or the City, and the officials had no actual knowledge of the purported mortgage liens on the motor chassis and equipment.

Appellee, Motor Investment Company, owner and holder of the note and mortgage, instituted this suit against J. Earl Presley and R. M. Hedrick, individually, for debt and foreclosure of the mortgage lien on the motor chassis as it existed on November 4, 1940, vouching in the suit the City of Hamlin. On trial to the court, without the intervention of a jury, judgment was entered in favor of appellee against the defendants J. Earl Presley and R. M. Hedrick, for debt, and for foreclosure of the chattel mortgage against the motor chassis as to all defendants. The City of Hamlin alone appeals, assigning error on the action of the court in rendering judgment foreclosing the mortgage against the motor vehicle, in effect challenging (1) the validity of the mortgage as against appellant, and (2), that it was an innocent purchaser for value.

On the second issue above, the Mayor, representative of appellant City at the time the fire truck was purchased, knew that Hedrick was doing business at Dallas, Dallas County; that Hedrick had brought the

truck to Hamlin, Jones County, for the purpose of displaying and demonstrating it for sale; that the truck was out of Dallas County only temporarily, and would be returned should sale not be consummated. Under these facts, the City, through its proper officials, had constructive notice of the mortgage of record in Dallas County covering the motor chassis afterwards purchased by the City; therefore, was not a purchaser in good faith under terms of Art. 5490, R.S. See First Nat. Bank v. Thompson, Tex.Com.App., 265 S.W. 884.

Appellant not being an innocent purchaser, we will next consider whether the mortgage was void as to the City of Hamlin. Art. 4000 provides: "Every mortgage, deed of trust or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of the possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void." It will be seen that this statute declares broadly that such mortgages "shall be deemed fraudulent and void," intended for the protection of the public, dealing with the owner of any stock of goods, wares or merchandise daily exposed to sale in the regular course of business, without distinction as to the character thereof or the nature of the business carried on. The statute forbids such mortgages where they represent an effort of a manufacturer, wholesaler, jobber, or retailer to retain the title as security for debt or contract. In the case of First Nat. Bank v. Thompson, supra, opinion by the Commission of Appeals, adopted by the Supreme Court, on facts very similar to those here, the court held that automobiles, like wagons, buggies and farm implements, are treated as goods, wares and merchandise, and that a mortgage given thereon by the retailer was obnoxious to the provision of the statute. So, under the facts stated in the case at bar, the chattel mortgage sought to be enforced is void under the statute, unless it can be held valid and enforceable against appellant under the Certificate of Title Act, Art. 1436—1, Vernon's P.C., enacted by the Legislature of this State in 1939. It will be seen that the motor truck was a part of Hedrick's stock in trade; he was a manufacturer of and retail dealer in fire equipment. The chassis attempted to be mortgaged was part and parcel of his manufactured product, as much so as the booster tank, hose, hose racks, and other necessary equipment incident to the completed fire apparatus sold to the City of Hamlin. Manifestly, Hedrick was a retail dealer in motor fire trucks, rebuilt and assembled for resale at retail to owners. Sec. 19, Art. 1436—1, Certificate of Title Act, Vernon's Ann.P.C. Hedrick acquired good title to the vehicle from Elkins Motor Company, without any liens retained by the seller. Motor Inv. Co. v. Knox City, Tex.Sup., 174 S.W.2d 482. The City of Hamlin was an "owner," as defined in Sec. 4, Art. 1436—1, supra; purchasing at retail the truck exposed for sale in the open market; therefore, the sale by the dealer (Hedrick) to the owner (City of Hamlin) was a "first sale," as defined in Sec. 7 of the Act (Motor Inv. Co. v. Knox City, supra).

The further sections of Art. 1436—1 provide:

"Sec. 37(b). Any person rebuilding or assembling a motor vehicle, shall, before using same or operating same, or permitting the operation of same, or disposing of same, procure a certificate of title for same from the Department. * * *"

"Sec. 41. No lien shall be valid on any motor vehicle which is hereafter the subject of a first sale, or be enforceable against any such motor vehicle unless there is noted on the importer's or manufacturer's certificate the date, name, and address of the mortgagees *whose rights arise out of or are incident to such first sale* by reason of the execution of any written instrument by the transferee." (Emphasis supplied)

"Sec. 42. No lien on any motor vehicle shall be valid as against third parties without actual knowledge thereof or enforceable against the motor vehicle of any such third parties as the issuance of a certificate of title thereof, unless an application for a new title is made as prescribed in this Act and all first and subsequent liens noted by the Department thereon."

Taking the entire Act under review, though not free from obscurity, we are of opinion that the Legislature did not repeal, by implication or otherwise, the statute (Art. 4000, R.S.) forbidding mortgages, deed of trust or other form of lien to be given upon goods, wares or merchandise intended for exposure to sale in the usual course of business. They are declared to be fraudulent and void as against third

104

parties. At most, the Certificate of Title Act, supra, represents an effort to permit manufacturers, wholesalers, jobbers and retail dealers to retain title to motor vehicles or create liens thereon, where the motor vehicles are the subjects of first sales and such liens arise out of or are incident to such sales. Such liens are required to be noted on the manufacturer's certificates (Sec. 41). We are unable to find anything in the statute authorizing a manufacturer of or dealer in goods, wares or merchandise to mortgage stock in trade, open to the general public for sale. Indeed, such law would engulf the buying public in a mass of vexation. It is conceivable that the statute does not hinder manufacturers, distributors or dealers from creating, as between themselves, a lien or reservation of title in a motor vehicle, and that such lien or reservation is enforceable against an "owner," where such lien arises out of the transaction of sale between the parties and was duly noted on manufacturer's certificate passing to the transferee. Indeed, in this instance, the Ford Motor Company might well have retained a lien on the motor chassis when sold to Elkins Motor Company, and likewise with Elkins and Hedrick, if such lien had arisen in the transactions between the parties and had been noted on the certificate; such lien would have been enforceable against the City of Hamlin. It will be noted that Hedrick procured no certificate of title from Texas Highway Department after building and assembling the various parts that made up the fire truck, as required by Sec. 37(b); and the mortgage sought to be foreclosed neither arose out of nor was incident to either of the three transactions involving the sales of the truck. The mortgage was an independent, separate transaction between Hedrick and J. Earl Presley, made subsequent to the purchase by Hedrick from Elkins Motor Company. We do not believe the Certificate of Title Act generally permits the creation of liens by successive purchasers on goods open to retail trade, unless such liens arise out of sale transactions and are noted on the certificate.

Therefore, in absence of actual knowledge by the City of the mortgage lien and its recognition in the purchase of the truck, we are of the opinion, under the facts of this case, that the trial court was not warranted in foreclosing the mortgage against the fire truck in the hands of appellant;

accordingly, the judgment of the court below is reversed and judgment here rendered in favor of appellant.

Reversed and rendered.

On Rehearing.

■ On original submission, our attention was not called to Commercial Credit Co., Inc., v. American Mfg. Co. et al., Tex. Civ.App., 155 S.W.2d 834, writ refused, in which our Supreme Court expressly holds that Art. 1436—1, Vernon's P.C., enacted by the Legislature of this State in 1939, known as "Certificate of Title Act," repeals, by implication, Articles 5490, 5497 and 5497a R.C.S., Vernon's Ann.Civ.St. arts. 5490, 5497, 5497a, and all statutes which affect enforced disclosure of liens on automobiles. Therefore, in view of the holding, we must accept the interpretation and, in the light of this record, find that appellant City of Hamlin was an innocent purchaser of the motor vehicle in question, without actual or constructive notice of appellee's lien, and that the recorded chattel mortgage sought to be foreclosed is not a valid and enforceable lien against appellant and the motor truck in suit.

Appellee alleged in its petition that R. M. Hedrick was a manufacturer of fire trucks, by rebuilding and assembling motor vehicles, as "regulated by Subsection (b) of Section 37 of Article 1436—1, Title 17 of the Penal Code of the State of Texas." This Section of the Act provides that any person rebuilding or assembling a motor vehicle, "shall, before * * * disposing of same, procure a certificate of title for same from the Department," meaning Department of Public Safety of the State of Texas. Section 42 provides that: "No lien on any motor vehicle shall be valid as against third parties without actual knowledge thereof or enforceable against the motor vehicle of any such third parties as the issuance of a certificate of title thereof, unless an application for a new title is made as prescribed in this Act and all first and subsequent liens noted by the Department thereon." Thus, in absence of such certificate and notation of liens thereon, the rights of mortgagees are invalid and not enforceable against innocent purchasers.

■ It is contended by appellee in motion for rehearing that the penal act under review also repeals, by implication, Art. 4000, R.C.S., forbidding mortgages, deeds of trust, or other forms of liens upon goods, wares and merchandise intended for ex-

posure to sale in the usual course of business. It will be seen that Art. 4000 is not a registration statute. It merely declares that all liens given on any stock of goods, wares or merchandise, daily exposed to sale in regular course of business, shall be deemed fraudulent and void as against innocent purchasers. The Certificate of Title Act in no manner repeals Art. 4000; it merely reserves liens and rights of mortgagees in motor vehicles when such liens *"arise out of or are incident to such first sale"* and are noted on manufacturer's certificate (Sec. 41); and (Sec. 45) reserves to "owners" of motor vehicles, when such are exposed to sale with the knowledge and consent of mortgagees, all liens noted on certificates of title. Thus, only to the extent of preserving liens to "manufacturers, importers, distributors or dealers," arising out of or incident to the first sale of the motor vehicle, and to "owners" exposing motor vehicles for sale in open market, does Art. 4000, R.C.S., offend against the Certificate of Title Act; otherwise, no conflict appears in the two statutes. In consequence, Hedrick being a manufacturer and retail dealer, exposing the vehicle in question for sale in the open market in the usual course of business, and appellee's lien not having arisen out of or being incidental to any sales transaction involving the motor truck, notation on the manufacturer's certificate of the existence of its lien was not an enforced disclosure of such lien to the City of Hamlin. It will be seen that this statute expressly limits such preservation of liens to "owners." The term "owner," as defined by the Act (Sec. 4), "includes any person, firm, association, or corporation *other than a manufacturer, importer, distributor, or dealer * * *."* (Emphasis supplied) Therefore, Hedrick, being a manufacturer and retail dealer, as distinguished from an "owner," was clearly without the purview of the statute in making the lien on the motor vehicle exposed for sale, hence appellee's chattel mortgage was not enforceable.

■ Indeed, the Mayor of the City of Hamlin may have failed to exercise due care in not getting the manufacturer's certificate, otherwise would have had notice of appellee's lien; however, such failure or negligence is not imputed to the municipality. The City authorities purchased the fire truck in the open market without notice of appellee's lien, and with knowledge that the seller was a manufacturer and retail dealer exposing such trucks for sale in the usual course of business.

Section 1 of the Act provides that the terms therein defined shall control in the enforcement and construction of the Act. Therefore, giving the legislative intendment to the term "owner" of any motor vehicle, Hedrick could not expose the motor fire truck to sale in the usual course of business,. encumbered with a valid lien against an innocent purchaser. It is quite true that Hedrick, being a manufacturer and dealer, may have encumbered the motor truck with a lien arising out of or incident to some of the sale transactions, but appellee's lien did not arise out of any sale of the truck; it was an independent loan, not enforceable against appellant.

In the case of Service Finance Corporation v. Singleton, 140 Tex. 86, 166 S.W.2d 98, 101, the Supreme Court called attention to the holdings in Commercial Credit Co., Inc. v. American Mfg. Co., supra, also to Art. 1436—1, Certificate of Title Act, and in the opinion, applicable here, the court said: "The burden rested on respondent to establish that Utzman was a dealer in motor vehicles as contemplated by Article 5497a; that he was a bona fide purchaser of said automobile; and that same had been daily exposed for sale. It was necessary to do this to defeat the rights of the Service Finance Corporation specifically retained in the note and chattel mortgage. However, respondent failed to do this, and the undisputed testimony presents a question of law, and not a question of fact." So, in the case at bar, all the necessary elements to defeat the rights of the Motor Investment Company were shown, therefore the evidence presents no question of fact.

Appellee's motion for rehearing is overruled.

YOUNG, Justice (dissenting).

I disagree with the majority ruling that Presley (assignor of Motor Investment Company) acquired no valid lien as against City of Hamlin, his prior mortgage being dated November 4, 1940, evidenced by notation thereof on the Hedrick manufacturer's certificate and instrument of mortgage filed in the Dallas County chattel mortgage records. The sale to appellant City was subsequent thereto, or March 14, 1941.

In truth, this case is ruled by Motor Inv. Co. v. Knox City, Tex.Sup., 174 S.W.2d 482, 486, as Presley had fully complied

with Sec. 41 by noting on the manufacturer's certificate the fact of his mortgage, and same was incident to and simultaneous with the sale of the truck by Elkins Motor Company to Hedrick, being to the extent of $750 a cash advancement by Presley on the purchase price. Here, in the subsequent negotiations between Hedrick and City of Hamlin, the latter could easily have protected iself by demanding profert of manufacturer's certificate, whereby the prior mortgage would have been disclosed. Although our Supreme Court, in Motor Inv. Co. v. Knox City, supra, holds that, while transfer of manufacturer's certificate is not essential to the validity of a first sale, yet a purchaser is charged with notice of any lien that may be already noted thereon. On all fours with the instant facts, Judge Alexander there states: "It is true that Section 41 provides that no lien shall be valid on any motor vehicle unless there is noted on the manufacturer's certificate certain evidence of the existence of such a lien, and, *by implication at least, such statute charges purchasers with notice of such a lien if it is so noted on the certificate. For this reason it is necessary for purchasers, in order to protect themselves against any outstanding liens shown on the certificate, to obtain such certificate before buying the vehicle; * * *."* (Italics mine)

The majority further holds that the Presley-Hedrick loan was violative of Art. 4000 (passed in 1879). This old statute (4000) was superseded, in so far as motor vehicles were concerned, by Art. 5497a (Acts 1933), which in turn has been repealed perforce of Art. 1436—1, Vernon's Ann.P.C., Certificate of Title Act; Commercial Credit Co., Inc. v. American Mfg. Co. et al., Tex.Civ.App., 155 S.W.2d 834, writ refused.

Likewise, the Motor Company lien has here been declared unenforceable because (Sec. 41) not arising out of or incident to a first sale, and (Sec. 45) Hedrick was not an "owner," as defined by the Act. The Legislature expressly provides for a liberal construction of Art. 1436—1 and its many sections, either singly or collectively (Sec. 1), and the final section declares: "* * * the fact that an early adoption of this Act will operate to materially safeguard dealing in motor vehicles and using the same as security * * *" creates an emergency. Section 66. The Act, in its broad scope and detail, manifests a legislative purpose to cover the entire field of legislation relative to motor vehicles; and, aside from the fact that the lien in question arose out of and was incident to the Elkins Motor Company-Hedrick sale (being cash advanced to Hedrick in the transaction), I believe the Act authorizes the unrestricted use of motor vehicles as security by either manufacturer, distributor, dealer, or subsequent owner, assuming, of course, an appropriate compliance with the statute.

The judgment under review is correct and should be affirmed.